W. S. GORDON, GUARDIAN OF W. S. GORDON, JR., *v.* W. W.
PERRY, GUARDIAN OF EULA JAMES.

[54 South. 445.]

WILLS.  *Renunciation.  Disposition of property.  Code of* 1906, *section*
5086.

> Where a specific devise of real property was avoided by the renuncia-
> tion by the widow of the testator, as provided for under Code 1906,
> § 5086, and in the subsequent distribution only one-half of a lot
> devised to the widow is received by her, the other half of the lot
> descends as undivided property to the heirs and does not go to the
> residuary legatees.

APPEAL from the chancery court of Yazoo county.
HON. G. G. LYELL, Chancellor.

Suit between W. S. Gordon, guardian, and others and
W. W. Perry, guardian of Eula James.  From a judg-
ment against him W. S. Gordon, guardian, appeals.

The facts are fully stated in the opinion of the court.

*Barnett & Perrin* and *E. L. Brown,* for appellant.

It would be manifest folly to say that because he de-
vised this lot to his wife that the testator manifested
his intention that the residuary devisees should not take
it, for his specific disposition of it equally manifested
his intention that the heir should not take it.  The spe-
cific provision made for the heir imports that it should
not take other than the specific devise.  Furthermore,
the provision made for the heir was by codicil, and he
did not evidence any intention thereby to take from the
residuary devisees something for it, but he let the pro-
visions for the latter stand in both the will and the pre-
vious codicil.

The law presumes, from the very fact of making a
will, that the testator did not intend to die intestate, or

partially so; the law favors testacy, and will not adopt a construction which will lead to partial intestacy, as said by Mr. Redfield and approved by this court, "unless absolutely forced upon it." *Hawkins* v. *Vaiden,* 59 Miss. 406.

The presumption against an intent to die intestate, when a will has been made and arising from the fact of making a will, is the foundation of the rule that personalty, in the case of a lapse or failure of the devise for any other reason, falls into the residuum and passed by the residuary clause. "Everything which is ill given by the will falls into the residue, and it must be a very peculiar case indeed in which there can be at once partial intestacy and a residuary clause." *Leake* v. *Robinson,* cited in *Vick's Exrs.* v. *McDaniel,* 3 Howard 337; Lord Hardwick in *Durant* v. *Motteaux,* also cited in 3rd Howard 337, treats a residuary clause as including legacies which fail as in accordance with express intention, the express intention, considered, however, being not to die intestate.

Under stress, it may be contended by counsel for the heir, that the use of the words, "not specifically disposed of above," as found in the residuary clause, manifests an intent to except all the property specifically devised and bequeathed from that given the residuary beneficiaries of the will, and this position is more or less plausible, yet always speciously, maintained by some of the authorities, but we think the correct rule is laid down by Vice Chancellor Wood, in *Merbard* v. *Minsell,* Johns. (Eng. Ch.) 296, 299, stated with approval in *Tindall* v. *Tindall,* 24 N. J. E. 512, in this language: "All you have to consider is whether the property is excepted, in order to take it away, under all circumstances and for all purposes, from the person to whom the residue is given; or whether it is excepted, merely for the purpose of giving it to some one else. If the

latter, and the gift to some one else fails, the donees of all except this property take the whole.''

*Hanley* v. *Beasley,* 4 Ves. 732; *Browns* v. *Higgs,* 4 Ves. 709; *O'Toole* v. *Browne,* 77 E. C. L. 571; *Hayden* v. *Stoughton,* 5 Pick. 528, 13 East. 526, 3 Maul & S. 300, and Harrington (Del.) 524; *Hillis* v. *Hillis,* 25 N. Y., and *Youngs* v. *Youngs,* 45 N. Y., cited in *Cruikshank* v. *Home,* etc., 4 L. R. A. 140; *Thayler* v. *Willington,* 9 Allen 283, 4 Kent 541, rule and reason stated; *Mueller* v. *Buenger* (Mo.), 67 L. R. A. 648; *Brimer* v. *Schier,* 1 Cushing 132; *Blaney* v. *Blaney,* Ib., 107; *Cruikshank* v. *Home, etc.,* 4 L. R. A. 140; Colorado, *Clauton* v. *Hallet,* 59 L. R. A. 414; S. C., *Welbourn* v. *Townsend,* 10 S. E. 96; New Jersey, *Smith* v. *Curtis,* 29 N. J. L. 345; Iowa, *Briggs* v. *Briggs,* 29 N. W. 632; Ark., *Patty* v. *Goolsby,* 9 S. W. 846; Oregon, *Hardenburg* v. *Roy,* 151 U. S. 112; Maine, *Drew* v. *Wakefield,* 54 Me. 294; Virginia, *Gallenger* v. *Rowan,* 11 S. E. 121; *Vick* v. *McDaniel,* 3 Howard 337.

*Campbell & Campbell,* for appellee.

In December, 1903, D. A. James departed this life leaving a last will and testament by the terms of which in item eight he devised to his wife a lot in Yazoo City, Miss., with the provision that his mother should have the use of a stable on the back end of the lot. The will was made in 1900. Subsequently the testator conveyed by deed to his mother a life estate in said lot. At the date of his death, he left as his sole heirs, his wife Carrie W. James and an infant daughter, Eula James, about two years of age. After making various bequests, legacies, and devises in his will to his wife, mother, brother, nieces and nephews and friends, in item fourteen of the will we find a residuary clause in the following language:

''Any and all property owned by me at the time of my death and not specifically disposed of above, I will and bequeath to Mary P. Gordon (now Huber), W. S. Gor-

don, Jr., children of John Gordon, deceased, T. W. James and Chas. E. Weir, share and share alike.''

By codicil No. 2 of will the name of T. W. James is stricken from the residuary clause.

The widow Carrie W. James, devisee of the lot by item eight of will, renounced the will and under the decision of this court in *Gordon* v. *James,* 86 Miss. Rep., page 719, took a one-half interest in remainder in said lot.

The guardian of Eula James, the only child and heir of D. A. James and the persons named in the residuary clause, item fourteen of will (except T. W. James who was omitted by codicil No. two to will), filed a petition in the chancery court of Yazoo county to have the will construed and settle the title to the other one-half interest in remainder to lot devised to Carrie W. James, wife in item eight of will.

At common law there was a distinction between lapsed, void and refused legacies and devises. A lapsed, void or refused bequest of personal property when there was a residuary clause, went to the residuary legatee. A lapsed or void devise of real estate went to the residuary legatee. A lapsed or void devise of real estate went to the heir at law, and not to the residuary devisee. See Am. and Eng. Ency. of Law (2nd Ed.), vol. 18, pages 760 to 763; see also Am. and Eng. Ency. of Law (1st Ed.), vol. 13, pages 40 to 43, and cases cited in notes where the matter is more fully and exhaustively discussed, than in the 2nd Edition of the American and English Encyclopedia of Law.

In New York Chancery Reports, 4 Paige, in the case of *James* v. *James,* page 114, the matter is fully discussed; and as this case is almost exactly similar to the case under consideration we will quote the language of Chancellor Walworth, 114:

It appears to be well settled that in a will of personal estate, a general residuary bequest carries to the residuary legatees not only everything not disposed of in

terms or by necessary implication, but also everything which turns out not to have been legally disposed of so as to pass to the persons intended as the objects of the testator's bounty.  But it is otherwise as to a residuary devise of real estate.  For if a part of the real estate is specifically devised, and the devise does not take effect, either from the incompetency of the devisee to take, from a partial revocation of the will, a lapse by the death of the devisee in the lifetime of the testator, or from the not happening of the contingency upon which a condition precedent the devise was made or was to take effect, it descends to the heir at law as property undisposed of by the will.  *Wright* v. *Hall,* Fortesc. Rep. 182; *Watson* v. *Earl of Lincoln,* Amb. Rep. 325; *Gravenor* v. *Hallum,* Id. 45.  The case of *Greene* v. *Dennis,* 6 Conn. Rep. 293, is analogous to the one now under consideration.

Twentieth Wendell, N. Y., pages 457-475; 88 Penn. St., p. 470; *Morris* v. *Henderson,* 37 Miss., pages 506 and 507; 2 Madd. Ch. 94; *James* v. *James,* 4 Paige 117; see vol. 13, Am. and Eng. Ency. of Law, top of page 42; *Rizer et al.* v. *Berry et al.,* 58 Md. Rep., p. 134; *Warring* v. *Warring,* 17 Barbour, Sup. Court Reports, page 522; vol. 13 (1st Ed.) of the Am. and Eng. Ency. of Law, pp. 40 and 41, and note 1, page 41.

MAYES, C. J., delivered the opinion of the court.

A brief statement of the case is about as follows: Some time in 1900 D. A. James executed a will, leaving many legacies and devises to various persons.  Later Mr. James died, and this controversy is as to whether or not the residuary devisees take a certain lot in Yazoo City, or whether this lot goes to the heir as property undisposed of by the terms of the will.  The facts in relation to this lot are about as follows:  At the date of the death of Mr. James his will made provision for his wife and also his only child, and, after making many other specific legacies and devises to various other par-

ties named in the will, by item fourteen he inserts this
clause: "Any and all property owned by me at the
time of my death, and not specifically disposed of above,
I will and bequeath to Mary P. Gordon, W. S. Gordon,
Jr., children of John Gordon, deceased, T. W. James, and
Charles W. Weir, share and share alike." The particu-
lar lot in question is lot 155, which by the will was spe-
cifically devised to the testator's wife after the death of
his mother, to whom he had given a life interest. Sub-
sequently the wife renounced the will under section 5086
of the Code of 1906, and in the distribution of the estate
made to her after the renunciation of the will, instead
of getting this whole lot, she only got one-half of it, leav-
ing the other half undisposed of by the will, because of
the renunciation of the will, which had specifically given
her the whole of same. The mother, to whom belonged
a life interest in same, filed this bill, stating that she
desired to surrender her life interest to the person en-
titled to same after her death, but did not know to whom
to make the deed, since it was claimed by the heir on the
one hand, and the residuary devisees on the other. The
chancellor decreed in favor of the heir, and from that
judgment this appeal is prosecuted.

We think the case is settled by the case of *Morris* v.
*Henderson,* 37 Miss. 492, and also by the case of *Barton*
v. *King,* 41 Miss. 288. In the first of the above cases the
court expressly states the rule to be followed in this
state, and says: "If the real estate 'be specifically de-
vised, and the devise does not take effect, either from
the incompetency of the devisee to take, from a partial
revocation of the will, a lapse by the death of the devisee
in the lifetime of the testator, or from the contingency
not happening upon which, as a condition precedent, the
devise was made, or was to take effect, it descends to the
heir, as property undisposed of by the will,' and does
not go to the residuary devisee under the general resid-
uary clause. *James* v. *James,* 4 Paige (N. Y.) 117. But

if the real estate be not attempted to be disposed of specifically by the will, it will pass to the general residuary devisee, unless restricted by other clauses of the will; for, not being disposed of, nor attempted to be disposed of, it must be taken to have been intended to be embraced in the positive disposition of the residuary clause. 1 Jarman on Wills (1st Am. Ed.), 588-590. In such a case it would be doing violence to the express disposition of the will to say that, as to such real estate, the testator intended to die intestate.''

We have no hesitancy in reannouncing the above rule already declared by this court as the one to govern in this state, and amply supported by authority from many states, as an examination of the authorities cited in section 2175, vol. 49, of the Century Digest will show.

*Affirmed.*