COUNTISS *v.* KING *et al.**

(Division A. Jan. 2, 1928.)

[115 So. 109. No. 26767.]

1. WILLS. *Will giving widow life estate in all land, but describing land not owned, could be corrected so as to give her life estate in land owned, will showing land intended.*

   Where will gave testator's wife life estate in all testator's land, not describing same, and testator owned land only in township 23, devises made subject to life estate, describing land as in township 24, could be corrected to read township 23, and description covering southwest 40 of northeast quarter, which he did not own, could be corrected to read southwest 40 of southeast quarter, since it was permissible to refer to lands embraced in life estate and show by parol testimony that such lands were owned by testator, and there was no difficulty in determining from will itself land intended to be devised.

2. WILLS. *Court construing will must consider attending circumstances of testator, quantity and character of estate, and other facts.*

   In construing wills, court must take into consideration attending circumstances of testator, quantity and character of his estate, state of his family, and all facts known to him which may reasonably be supposed to have influenced him in disposition of his property.

3. WILLS. *Where will is so worded as to show testator's intention to pass lands in given section, technical description may be rejected, if erroneous.*

   Where will is so worded as to show testator's intention to pass his lands in given plat or section and the like, description of particular lot, quarter section, and the like may be rejected, if erroneous.

*Corpus Juris-Cyc. References: Wills, 40Cyc, p. 1392, n. 11; p. 1559, n. 21, 23; As to law governing construction of wills generally see 2 L. R. A. (N. S.) 443; 28 R. C. L. 204, et seq.; 3 R..C. L. Supp. 1563.

APPEAL from chancery court of Tallahatchie county, Second district.

HON. HARVEY MCGEHEE, Chancellor.

Suit by R. W. King, Jr., and another, minors, by their father and next friend, R. W. King, Sr., against G. B. Countiss and others, for the construction of the will of Joe Jackson, Sr., and for a reformation thereof. From a decree overruling a demurrer, defendant named appeals. Affirmed and remanded.

*Ward & Ward,* for appellant.

The appellees in this cause (complainants in the court below), are seeking to reform and correct the last will and testament of one Joe Jackson, Sr., deceased, and make it conform to what they allege is the purpose and intention of the testator. An action to reform a written instrument is in the nature of an action for specific performance, and the making of a will is a voluntary act and there is no consideration to support the action in the case of a will. The grounds for reformation of an instrument are, that it fails to express the intention of the parties thereto as the result of mistake, fraud or inequitable conduct, or both fraud and mistake. In the absence of satisfactory proof of either fraud or mistake there is no basis for a court of equity to reform an instrument of any kind. But a court of equity has no jurisdiction of suit to reform a will. 23 R. C. L., pp. 318-320; 28 R. C. L., pp. 203-164; 115 U. S. 634; 216 U. S. 505; 65 A. S. R. 484, n.; *Goodbar* v. *Dunn,* 61 Miss. 618; *Nugent & Co.* v. *Preibacth,* 61 Miss. 402; *Schlottman* v. *Hoffman,* 73 Miss. 188; 28 R. C. L. 220; *Chrisman* v. *Magee,* 108 Miss. 568.

*J. J. Breland* and *H. C. Mounger,* for appellees.

The specific question presented by this record is, to-wit: Has the chancery court the power under the law,

in construing the will of Joe Jackson, Sr., to correct the misdescription of the land described in the will as the southwest quarter of northeast quarter of section 6, township 24 north, range 1 west, Tallahatchie county, Mississippi, so as to make the description in the will read southwest quarter of southeast quarter, section 6, township 23 north, range 1 west, Tallahatchie county, Mississippi?

We agree with counsel for the appellant that the general rule of law that a court of equity will not reform a will, is correct. It is also correct that, as a general rule, a court in construing a will, cannot correct a mistake made by the testator unless the mistake appears on the face of the instrument, and that it also appears from the will itself what would have been the will of the testator if the mistake had not occurred. In other words, it seems to be a general rule that a court, in construing a will will not correct a mistake made by the testator in his will unless it is a patent ambiguity. However, the law makes an exception to this general rule where there is a misdescription of lands devised by the will. The exception to this rule as defined by this court is laid down in the case of *Chrisman* v. *Magee,* 108 Miss. 550, 67 So. 901. The Chrisman case is almost identical in facts with the case at bar. See, also, 2 R. C. L. 278, sec. 248; *Pate* v. *Bushong,* 161 Ind. 533, 69 N. E. 291; 100 A. S. R. 287; 63 L. R. A. 593; *Patch* v. *White,* 117 U. S. 210; 6 Sup. Ct. 617; 29 L. Ed. 860.

McGowen, J., delivered the opinion of the court.

The complainants in the court below, Joe King and R. W. King, Jr., minors by their father and next friend, R. W. King, Sr., filed their bill against G. B. Countiss, R. L. Ward, trustee, Joe Jackson, Jr., and others in the chancery court of the Second district of Tallahatchie county, Miss., seeking a construction of the will of Joe Jackson, Sr., and a reformation thereof to the extent of expressing

the intention of the testator in his will with reference to an alleged misdescription of land. It was alleged in the bill that the complainants, the minors, were the only male children of Rosa King, who was a daughter of the testator; and all the heirs at law of Joe Jackson, Sr., were made parties to the bill.

It was further alleged in the bill that the only land owned by the testator at all times prior to his death was the southeast quarter (S. E. ¼) of section six (6), township twenty-three (23), range one (1) west, Tallahatchie county, Miss.; that this land was owned by him at the dates of his execution of the will and his death; and that it was the only land in which he had an interest. The will was made an exhibit to the bill, and is here set out in full:

"Last Will and Testament of Joe Jackson, Sr.—Will Book 1, Page 49.

"Exhibit A.

"State of Mississippi, Tallahatchie County:

"I, Joe Jackson, Sr., of Tallahatchie county, Mississippi, being more than twenty-one years of age, and being of sound and disposing mind do make and publish this, my last will and testament.

"I give devise and bequeath all of my estate, and property, both real and personal, as follows:

"1st. I do direct that as soon as can be done after my death, all of my just debts shall be paid out of my money, or evidences of debt that I may own, or any rents or other money that may be due and owing to me, and, if there is not sufficient, as aforesaid to satisfy said debts, if any, then my executors, hereinafter appointed shall sell such personal property belonging to my estate, either at public or private sale that will be sufficient to satisfy said debts.

"2nd. I give and bequeath to my beloved wife, Ellen Jackson, in case she survives me, my entire estate, property both real and personal, that I may have or possess in any manner or form to have and to hold for her natur-

al life, subject, however, to the following conditions named in this paragraph, as follows; that in case she should marry after my death and at any time during her lifetime, then her life estate in my estate, both real and personal shall cease and automatically revert to my devisees as hereinafter provided, except two hundred dollars ($200) is to be paid her out of my estate in her second marriage.

"3rd. Subject to the life estate on condition of my said wife, I give, devise and bequeath all my personal property of every description and kind to my sons, Joe Jackson and Matthew Jackson, and to my daughters, Rosy King and Ella Paine, share and share alike.

"4th. I bequeath and devise to my son, David Jackson, the sum of ten dollars ($10) to be paid out of any money belonging to my estate. It is my desire and will that my said son, David Jackson, shall not share in my estate or receive any part thereof, except the said ten dollars ($10).

"5th. Subject to the said conditional life estate of my said wife, I give, devise, and bequeath to my son, Joe Jackson, Jr., the following real estate: All the northeast quarter (N. E. ¼) of the southeast quarter (S. E. ¼) of section (6) in township (24) range (1) west in Tallahatchie county, Mississippi, to have and to hold in fee simple, and to my son, Matthew Jackson, the following described real estate: All of the northwest quarter (N. W. ¼) of the southeast quarter (S. E. ¼) of section (6) in township (24) range (1) west, in the above named county and state, to have and to hold in fee simple, and to my daughter Rosy King, the following real estate: All of the southwest quarter (S. W. ¼) of the northeast quarter (N. E. ¼) of section (6) township (24), range (1) west, in the above named county and state, to have and to hold for her natural life, then to the male children of her body share and share alike in fee simple to be held in trust for them by my sons, Joe Jackson and Matthew Jackson, or the surviving of them, until her aid

children reach their majority, and in case she should die without any male children, then the said land shall revert to my sons, Joe Jackson and Matthew Jackson, in equal proportions to be held by them in fee simple and to my daughter, Ella Collins, the following described real estate: All of the southeast quarter (S. E. ¼) of the southeast quarter (S. E. ¼) of section (6) in township (24), range (1) west in the above named county and state to have and to hold for her natural life then to the male heirs of her body in fee simple in equal proportions to be held in trust for them by my sons, Joe Jackson and Matthew Jackson, or the survivor of them until they reach their majority, and in case she should not have any male children at her death, then said land shall revert to my sons, Joe Jackson and Matthew Jackson in equal proportions in fee simple.

"6th. I do hereby constitute and appoint my wife, Ellen Jackson, my sons, Joe Jackson, Jr. and Matthew Jackson, my executors of this my last will and testament, and I do hereby expressly relieve them from giving bond or security for acting as executors.

"In witness whereof, I have signed and published and declared this instrument as my last will and testament.

"This the 23rd day of December, A. D. 1916.

his<br>
"JOE X JACKSON.<br>
mark

"Witness: B. L. NEAL.

"F. V. CATOE."

The bill charged that, either in drafting the will or in the recording of same by the clerk, an error was made in the description of the land owned by the testator and devised by the will, in that the land was described in the will as being in township 24, when in truth and in fact it was actually located in township 23; and, further, that as to the devise of a life estate to Rosa King, mother of the complainants, in addition to the error made in the number of the township, the land devised was misde-

scribed as the southwest quarter (S. W. ¼) of the *north-east quarter* (N. E. ¼), section six (6), when it should have been designated as the southwest quarter (S. W. ¼) of the *southeast quarter* (S. E. ¼) of section six (6), township twenty-three (23), range one (1) west; that this misdescription was made either by the scrivener of the original will or by the clerk in recording it; that the original will could not be found or produced; and that same is now lost or destroyed. The will was promptly probated.

The bill further alleged that on the 26th day of February, 1924, Rosa King and her husband, R. W. King, Sr., conveyed all the interest acquired by them under the terms of such will in and to the southwest quarter (S. W. ¼) of the southeast quarter (S. E. ¼) of section six (6), township twenty-three (23), range one (1) west, to R. L. Ward, trustee, to secure an indebtedness evidenced by certain notes payable to G. B. Countiss, beneficiary in the trust deed; that in August, 1926, R. L. Ward, as trustee, advertised and sold the land, G. B. Countiss becoming the purchaser thereof; and that Ward attempted to convey such lands, as trustee, to Countiss, all of which proceedings are made exhibits to the bill. The bill further alleged that G. B. Countiss was claiming to be the owner of the lands in fee simple to the exclusion of the title owned by the complainants; that the trust deed and the trustee's deed, and each of them, cast a cloud, doubt, and suspicion upon the title in and to the said lands owned by the complainants' and that the trust deed and the trustee's deed should be canceled as clouds upon the title of complainants, and thereupon be held in trust by the trustees named in the will. After praying for process, the bill asked for the following relief:

"Your complainants further pray that on a final hearing of this cause your honor will construe said last will and testament of the said Joe Jackson, Sr., deceased, and reform said will and correct the mistakes therein, and will find and decree your complainants to be the owners

in fee simple, under and by virtue of the terms of said last will and testament, of the said southwest quarter of the southeast quarter of section 6, township 23, range 1, west, Tallahatchie county, Miss., said land to be held in trust for them by the said Joe Jackson, Jr., and Matthew Jackson, or the survivor of them, until your complainants shall reach their majority.

"Your complainants would further pray that this honorable court will find and decree that the said trust deed and trustee's deed, copies of which are made Exhibits E and F, respectively, to this bill of complaint, be decreed null and void as far as the same does or purports to be a lien or title superior to the title of your complainants, and that the same be canceled as a doubt, cloud, and suspicion upon the title of your complainants in and to said last described lands, and that the fee-simple title to said lands be decreed to be in your complainants, to be held in trust for them by the said Joe Jackson, Jr., and Matthew Jackson, or the survivor of them, until your complainants reach their majority, and that your complainants or their said trustees be put in possession of said lands by writ of assistance or other proper process of this court. Your complainants further pray that their solicitors of record be allowed a reasonable solicitor's fee for representing them in this case, and that the same be fixed as a lien upon the said land.

"Now, if your complainants have not prayed for the proper relief, or have prayed for insufficient relief, then they pray for such other, further, and different and additional relief as the facts in this case show that they are entitled to receive. And complainants pray for general relief. As in duty bound they will ever pray," etc.

To this bill the defendant, G. B. Countiss, filed a demurrer, assigning the following causes:

"(1) Because the bill of complaint shows no equity on its face.

"(2) Because the bill of complaint seeks to reform and correct the last will and testament to make it conform to the purpose and intention of the testator not expressed in the instrument as executed by him.

"(3) Because an action to reform a written instrument is in the nature of an action for specific performance, and the making of a will is a voluntary act, and there is no consideration to support the action in this cause.

"(4) Because the testator in the will which is sought to be reformed and corrected in this cause has passed beyond the jurisdiction of all earthly courts.

"(5) Because a will is a voluntary conveyance, and, if the court had jurisdiction of the testator, it could not compel him to make a will of any sort.

"(6) Because the statute of wills provides that property may be devised by wills actually made, and not by what these parties intend, however, definitely, to make but do not make.

"(7) Because the bill of complaint and exhibits thereto alleged and show the last will and testament which they undertake to reform and correct has been legally and lawfully admitted to probate, by proper decree of this honorable court, just as it is written in the last will and testament of the testator, that said judgment of the court admitting said will to probate remains in force and effect and this court, is not, in the absence of fraud (and no fraud is alleged in the bill of complaint) authorized to adjudge that the instrument, or any of its provisions, is not the will of the testator.

"(8) Other causes to be shown at the hearing."—which demurrer was overruled and an appeal granted to this court to settle the principles of the cause.

It is contended here by the appellant, Countiss, defendant in the lower court, that the object sought to be attained by the bill is to effect a reformation of a will, and that a court of equity is without power so to do. The salient features of the bill which must be emphasized

here in order to arrive at a correct construction of the will are:

(1) That all the lands owned by the testator were devised to his widow during her life and widowhood.

(2) That the remainder of the estate was devised in two forty-acre tracts of land, one to each son, and that a life estate was devised in the other remaining two forty-acre tracts to the two daughters of the testator, with a remainder to their male children.

(3) That the decedent had never, at any time in his life, owned any land in township 24 of Tallahatchie county.

(4) Specifically as to the forty acres of land devised in fee to the appellees here, that the testator had never owned any lands in the northeast quarter (N. E. ¼) of any section in Tallahatchie county.

(5) That a correct description of the forty-acre subdivision of the quarter section is given showing an intention to devise the entire quarter-section of land to his children; the mistake is that the lands devised in fee to these minors, sons of Rosa King, and the others, should be designated as being in township 23 instead of township 24, as described in the will, if the testator intended to devise any land at all to his children owned by him; and, in addition, that the description of the forty acres of land is further erroneous, in that it is described as being the *northeast* quarter (N. E. ¼) of said section six (6), when it should be the *southeast* quarter (S. E. ¼) of said section six (6).

It is contended here that the devise of the life estate to the daughter Rosa King was not valid, for the reason, that, when the incorrect portions of the description of the land are eliminated, the remaining language in the will does not authorize a court of equity, by the construction thereof, to place, in lieu of the part struck out, a correct description. It has been several times held by this court that a devise of "all property owned" by the testator is valid to pass the title to all real property

owned at the death of the testator, as directed in the will. See *Caffey* v. *Tindall,* 99 Miss. 851, 56 So. 177; *Morris* v. *Henderson,* 37 Miss. 492.

In the instant case, we are certain that the widow took a life estate in the land owned by the testator, and that the only land owned by him was the southeast quarter (S. E. ¼) of section six (6), township twenty-three (23), range one (1) west, Tallahatchie county. It is permissible to refer to the lands embraced in the life estate and show by parol testimony that such lands were owned by the testator. Having established that fact, we may eliminate the figure 4 with reference to township 24, and with absolute certainty insert in lieu thereof the figure 3 because each of the devises was absolutely in fee simple to the sons, and a life estate to the daughters with the remainder over to the male children of each daughter, and also subject to the life estate of the widow, so that there is no difficulty in determining from the will itself the land intended to be devised. The testator only owned one quarter section of land, after he devised to the other children, there only remained, undisposed by the will, the southwest 40 of the southeast quarter. The testator owned no land in the northeast quarter; and this devise refers so specifically to the life estate of the widow that there is sufficient clue within the terms of the will to be absolutely certain that the testator referred to the southeast quarter, and that the word "north" may be struck out, and the word "south" inserted in lieu thereof, the same being the land in which testator's widow was given a life estate.

In *Schlottman* v. *Hoffman,* 73 Miss. 188, 18 So. 893, 55 Am. St. Rep. 527, this court held:

"It is a well-settled canon for the construction of wills that the court will take into consideration the attending circumstances of the testator, the quantity and character of his estate, the state of his family, and all facts

known to him which may reasonably be supposed to have influenced him in the disposition of his property.''

It is certain from the allegations of this bill, as shown by the terms of the will, that the testator undertook to dispose of all of his property, but that the scrivener of the will made typographical errors as to the description of the particular property devised to each of his children. The mistake is obvious; the necessary correction in no sense rewrites the will, when we consider that it is the duty of the court to apply the rule announced in the *Schlottman case, supra.*

There are two lines of authorities in the United States with reference to the power of an equity court to correct a description of land in a will. All the courts seem to agree that a patent ambiguity appearing on the face of the will itself may not be altered or corrected by resort to extrinsic evidence but such evidence is held, in some cases, to be permissible as to latent ambiguities. As we have indicated before, one line of authorities holds that a provision in a will locating land devised in a section where testator owned no land will not admit parol evidence of a mistake in a description, although he in fact owned land answering the description in another section, of which he did not dispose in the will. The opposite view is reached by other courts; and extrinsic evidence is admitted to uphold the devise, especially when and where there are any other words in the will which help out its construction, such as the use of the words ''all my real estate.''

This court aligned itself with the latter view in the case of *Chrisman* v. *Magee,* 108 Miss. 550, 67 So. 49, 901, and quotes the following, on page 569 (67 So. 901) from Page on Wills, as the rule applicable to the case at bar;

''The greater weight of modern authority probably is that where the will is so worded as to show testator's intention to pass his lands in the given plat or section and the like, the description of the particular lot, quarter section, and the like may be rejected, if erroneous.''

149 Miss.—6.

Quoting further from the same opinion, the court says:
"Mr. Page further says (see page 571 [67 So. 901])
that all the courts practically agree that if 'after the
false description, or part of a description, is discarded,
there remains in the devise language sufficiently full and
accurate to identify the subject of the gift with sufficient
certainty, the property thus indicated will pass.' "

In the *Chrisman case, supra,* the will undertook to de-
vise a certain quarter section of land in a township in
which the testator owned no land, but owned a quarter
section of land in another township in that county; and
the court held that it was permissible to so construe the
will that it devised to the beneficiary the correctly de-
scribed quarter section of land; it appearing that the
testator owned no other land in that county. This is the
rule in Mississippi. See *Pate* v. *Bushong,* 161 Ind. 533,
69 N. E. 291, 63 L. R. A. 593, 100 Am. St. Rep. 287; *Chap-
pell* v. *Missionary Society,* 50 Am. St. Rep. 279; *Patch* v.
*White,* 117 U. S. p. 210, 6 S. Ct. 617, 710, 29 L. Ed. 860.
The rule announced in the *Chrisman case, supra,* is not
broadened when applied to the facts of this case. The
chancellor correctly overruled the demurrer.

*Affirmed and remanded.*